610 August 28, 2024 No. 600

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

MARCOS ANDRES PICO,
*Petitioner-Appellant,*

*v.*

JOSH HIGHBERGER,
Superintendent,
Oregon State Correctional Institution,
*Defendant-Respondent.*

Marion County Circuit Court
18CV09134; A177951

Patricia A. Sullivan, Senior Judge.

Submitted August 1, 2024.

Lindsey Burrows and O'Connor Weber LLC filed the brief for appellant. Marcos A. Pico filed the supplemental brief *pro se*.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Ryan Kahn, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, Kamins, Judge, and Balmer, Senior Judge.

LAGESEN, C. J.

Affirmed.

**LAGESEN, C. J.**

Petitioner appeals a post-conviction court judgment denying his petition for post-conviction relief from a jury conviction for first-degree murder. Reviewing for legal error, and accepting the post-conviction court's supported implicit and explicit factual findings, *Green v. Franke*, 357 Or 301, 312, 350 P3d 188 (2015), we affirm.

Petitioner was charged with first-degree murder in the death of his wife's ex-husband. At the seven-day-long jury trial, the state presented evidence that petitioner had motive to kill the victim based on a contentious child custody dispute between petitioner's wife and the victim. The evidence connecting petitioner to the crime, in addition to the motive evidence, included tests showing that blood smudges found in petitioner's car matched the victim's DNA, cellphone location data showing that petitioner's cellphone was in the vicinity of the murder scene at the time the victim was killed and then moved away from the scene, and testimony from police officers and petitioner's roommates about their observations of petitioner and his car the night of the murder. Those witnesses variously testified that petitioner did not seem sleepy or tired, that petitioner's face and head were freshly shaved and no longer had the "rat tail" he'd had earlier in the day, and that his fingernails appeared newly trimmed. The officers testified, in addition, that they observed on the night of the murder that petitioner's car was warm and did not have frost on it, even though petitioner told them he had not driven his car that night. That was notable because most of the cars parked at petitioner's apartment complex had frost on the windows given that it was a cold night.

The jury convicted petitioner of first-degree murder. Petitioner appealed; we affirmed the conviction without opinion, the Oregon Supreme Court denied review, and the United States Supreme Court denied certiorari. *State v. Pico*, 283 Or App 424, 388 P3d 751, *rev den*, 361 Or 240, *cert den*, 583 US 853 (2017).

Petitioner then sought post-conviction relief. He alleged, among other things, that his trial counsel was ineffective and inadequate in two ways, explained in more detail

below. He also argued that counsel's deficiencies amounted to cumulative error warranting reversal. The post-conviction court denied relief on all claims, and petitioner appeals.

　　　　*First Assignment of Error.* Petitioner assigns error to the post-conviction court's denial of his claim alleging that his trial counsel was ineffective and inadequate in failing to invoke the spousal privilege for certain incriminating statements that petitioner made to his wife after she picked him up from the police station following an interview about the crime. Although the statements were included in the discovery provided by the state, counsel did not see them, so he did not move to exclude them before trial. Then, in mapping out the state's case in opening statement, the prosecutor told the jury about the statements:

> "[Wife] picks [petitioner] up [from the police station], and when she picks him up, curious as to what's going on and why he's been there, talking to police, she asks him what went on, why he was there. And he says to her that '[police officers] think there's some blood in my car.' And then she starts to become ill and she's starting to make the connection.

> "'Why would there be blood in your car?' is what she's thinking. And then their conversation continues. It's mostly one-sided. And [petitioner] tells her that she's better off and the kids are better off without [the victim] in their life, a curious comment, a seeming ownership of responsibility.

> "And then [wife] will testify that, as he continues to talk, he says to her, 'he cried. He cried.' 'Who cried? And how would you know he cried unless you were staring at him with a knife in your hand, stabbing him 16 times?'"

　　　　After opening statements, defense counsel asked to confer with the court outside the presence of the jury to address the statements. At that point, counsel invoked the spousal privilege as to the statements, and the parties agreed not to refer to the statements again for the remainder of trial. Counsel did not request, and the court did not provide, any instruction to the jury specifically addressing the prosecutor's reference to the now-excluded statements. The instructions provided to the jury before deliberations included the standard instructions on what the jury could and could not

permissibly consider in making its decision. The jury was instructed that "[t]he lawyer's statements and arguments are not evidence. If your recollection of the evidence is different from the lawyers' recollection, you must rely on your memory." Additionally, it was instructed, "Do not allow bias, sympathy, or prejudice anyplace in your deliberation. Do not decide this case on guesswork conjecture or speculation."

On appeal, petitioner contends that trial counsel's failure to review the discovery and invoke the spousal privilege before trial prejudiced him because the statements were incriminating and likely affected the jury's verdict. The post-conviction court denied relief, determining that petitioner had not demonstrated prejudice; the court did not address the performance element of petitioner's claim.

We agree with the court's conclusion regarding prejudice and reject this assignment of error for that reason.

Trial counsel's failure to review discovery before trial no doubt represents a failure to exercise reasonable professional skill and judgment. *Krummacher v. Gierloff*, 290 Or 867, 875, 627 P2d 458 (1981) (trial counsel have an obligation to "investigate the facts and prepare [themselves] on the law to the extent appropriate to the nature and complexity of the case"); *cf. In re Munn*, 372 Or 589, ___ P3d ___ (2024) (in attorney discipline case, criminal defense counsel's failure to review discovery violated the Rules of Professional Conduct). Had counsel satisfied that obligation here, counsel would have invoked spousal privilege before trial, and the jury would not have heard about petitioner's incriminating statements to his wife.

Nevertheless, on this record, the post-conviction court correctly determined that counsel's deficiency did not prejudice petitioner. That is so for two reasons.

First, the jury was instructed that the lawyers' statements are not evidence and, under our case law, a jury is presumed to have followed the trial court's instruction, "unless there was an overwhelming probability that [the jury] would have been unable to do so." *Grant v. Coursey*, 277 Or App 165, 180-81, 370 P3d 360, *rev den*, 360 Or 235 (2016). This record does not allow for the conclusion that there was

an "overwhelming probability" that the jury was not able to follow the instructions not to treat the prosecutor's opening statement as evidence.

Second, and perhaps more significantly, although petitioner's statements to his wife are of the type that could potentially influence a jury's verdict, they are not likely to have affected the verdict in this case, because the evidence against petitioner, summarized above, left little room for doubt about his guilt. That is, on this record, we conclude the jury would have reached a guilty verdict even if counsel had reviewed the discovery and asserted the spousal privilege before trial. Accordingly, the post-conviction court did not err in concluding that counsel's failure to review the discovery and invoke the spousal privilege before trial did not have a tendency to affect the outcome of the jury's verdict. *Green*, 357 Or at 322 (stating prejudice standard under the state constitution); *Strickland v. Washington*, 466 US 668, 694, 104 S Ct 2052, 80 L Ed 674 (1984) (stating prejudice standard under the federal constitution).

*Second Assignment of Error.* Petitioner contends that the post-conviction court erred in denying relief on his claim alleging that his trial counsel was ineffective for failing to object to the state's closing argument. The post-conviction court denied relief, concluding that counsel had made a strategic decision not to object and that counsel's decision was reasonable. On review of the record, we agree with that assessment.

*Third Assignment of Error.* In his third and final assignment of error asserted through counsel, petitioner contends that the post-conviction court erred in rejecting his claim of cumulative prejudice. We reject that assignment of error, because Oregon's appellate courts have not recognized the doctrine of cumulative error. *Vega-Arrieta v. Blewett*, 331 Or App 416, 428, 545 P3d 746 (2024) (citing *Monica v. Myers*, 319 Or App 376, 386-87, 510 P3d 238, *rev den*, 370 Or 212 (2022)).

*First* Pro Se *Assignment of Error.* In a *pro se* brief, petitioner contends that the post-conviction court erred in denying his motion pursuant to *Church v. Gladden*, 244

Or 308, 311, 417 P2d 993 (1966). The post-conviction court denied the *Church* motion on the grounds that the motion was untimely and because the court determined that the motion was not a cognizable *Church* motion. The post-conviction court did not err in denying the *Church* motion, because the motion merely expressed petitioner's dissatisfaction with the manner in which his post-conviction counsel raised certain issues and was not seeking to raise claims that post-conviction counsel had not already raised. *See Bogle v. State of Oregon*, 363 Or 455, 458, 423 P3d 715 (2018) ("[T]he purpose of a proper *Church* motion is to notify the post-conviction court that [post-conviction] counsel has failed to raise certain grounds for relief.").

*Second* Pro Se *Assignment of Error.* Petitioner assigns error to the post-conviction court's denial of his motion under ORCP 71 for relief from the denial of his *Church* motion, arguing that the post-conviction court did not allow him sufficient time to review a potential claim for relief based on newly discovered DNA evidence. Petitioner does not identify the newly discovered DNA evidence. Under those circumstances, the post-conviction court did not abuse its discretion in denying petitioner's motion for relief from the judgment. *See Knutsen v. Sager*, 134 Or App 104, 106, 894 P2d 1204 (1995) (review of denial of ORCP 71 motion is for abuse of discretion).

*Third* Pro Se *Assignment of Error.* Petitioner assigns error to the post-conviction court's denial of his motion to compel DNA testing of the blood found in his car by an out-of-state lab based on his belief that the tests conducted by the Oregon State Police were faulty. The post-conviction court denied the motion because it did not find any reason to distrust the testing by the Oregon State Police, because it determined that sending the blood to an out-of-state lab would consume the remaining blood samples, and because sending the samples out-of-state would create chain-of-custody issues. Petitioner has not developed an argument as to why the court erred by relying on those considerations, and we reject the assignment of error for that reason.

Affirmed.